IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JODI HECKLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No. |
| | § | |
| REEDS SPRING R-IV SCHOOL | § | |
| DISTRICT THROUGH | § | |
| EARL JOHNSON, ROB BARRINGER, | § | |
| JOHN DOES, JOHN DOE BOARD | § | |
| MEMBERS AND JANE DOES, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

**COMES NOW** Plaintiff, Jodi Heckler, by and through counsel, Jerry M. Kirksey, and for her Petition, states as follows:

### GENERAL ALLEGATIONS

1. Plaintiff is citizen and resident of Branson Missouri and is previously known as Jodi Gronvold.

2. Defendant Reeds Spring R-IV School District is a school district in the State of Missouri which may be served through Earl Johnson at 20281 State Highway 413, Reeds Spring, Missouri.

3. Johnson, Barringer, John Doe Board Members and John Does who are administrators of the District are persons directly acting in the interest of the Reeds Spring R-IV School District and whose acts are within and as agents of the District.

4. Jane Does are persons directly acting in the interest of the identified individuals herein, and John Does and John Doe Board Members, with the information provided by and knowledge of certain Board members or administrators, directly acted in the

Case 3:17-cv-05258-RK   Document 1   Filed 11/10/17   Page 1 of 26

interest of the Board members and John Does in a conspiratal effort to disparage, and degrade the person and reputation of Plainitff and place her in a false light. Said persons would know who they are, have notice of the Charge and shall be named as appropriate through discovery in this action.

## BACKGROUND / FACTS

5.  The Reeds Spring R-IV District is a school district governed by its elected Board and of which has employees including a Superintendent, administration, teachers and staff.

6.  Plaintiff was a long-standing employee of the District.

7.  Plaintiff was a good employee.

8.  Plaintiff's personnel file is documented with awards, evaluations and information as evidence of her being a good administrator and employee of the District.

9.  Each year Plaintiff had one of the best Summative Evaluations based on rank score (cumulative objective data and her staff's evaluations) of any administrator of the District.

10. Plaintiff had the best Summative Evaluation ranks scores (cumulative objective data and her staff's evaluations) of any administrator in the District for the year 2015-2016.

11. In May of 2015, Plaintiff made a report per Board policy and Regulation 4810 of conduct of sexual harassment engaged in by the District's Superintendent, Mike Mason.

12. Regulation 4810 is a regulation of the Board of the District which prohibits Sexual Harassment.

13. The District's Title IX Coordinator conducted an investigation of Plaintiff's report.

14. The District's Title IX Coordinator found that Mike Mason violated District policy.

15. The Board voted and approved the findings that Mike Mason violated District policy.

16. During the investigation of Plaintiff's report, Earl Johnson and the District's Title IX Coordinator were provided the names and information as to conduct engaged in by Mr. Mason toward previous female employees of the District, including the name of a prior administrator of the District, Karla Harris.

17. Board policy and Regulation 4810 required a thorough and complete investigation of the report as to conduct of Mike Mason, which would have included the information reported to the board as to conduct engaged in by Mr. Mason toward previous female employees of the District.

18. The Board took no action to direct or have investigated the information known by the Board related to the information provided as to conduct of Mike Mason toward previous female employees of the District related to the report.

19. In August of 2015, a Charge of Discrimination was filed, Charge #560-2015-01719 / FE-08/15/24198, a copy attached hereto Exhibit A.

20. In December of 2015, a Charge of Discrimination (as then Amended) Charge #E-12/15-46254, a copy attached Exhibit B and C.

21. A legal action was filed in the Circuit Court of Stone County, Missouri, Case No. 16SN-CC00094 related to the Charge of Discrimination and the Missouri Commission of Human Rights issuance of a Right to Sue.

22. Through the legal action the parties engaged in discovery including depositions taken under oath of Earl Johnson, Michael Mason, Steve Verheyen, Liz Smith, Jodi

Case 3:17-cv-05258-RK   Document 1   Filed 11/10/17   Page 3 of 26

Gronvold and others, the exchange of documents by the parties, and the submission of an Affidavit of Karla Harris (attached hereto Exhibit "D")

23. An Agreement was reached by the parties to resolve the legal action.

24. On March 15, 2016, the Board of the District voted to accept the Agreement of Resolution of the legal action, said Agreement including terms requiring Plaintiff to resign her employment with the District.

25. On March 15, 2016, after approving an Agreement requiring Plaintiff to resign her employment, the male members of the Board, Earl Johnson, Al Morton, Owen Allphin, Rob Barringer, Matt Greenwalt and Rick Porter, voted to renew and extend Mike Mason's contract with his salary to be $146,334 for the 2018-2019 school year, same as the 2017-18 school year.

26. The sole female Board member, Anne Coleman, did NOT vote in favor of the extension of the contract of Mike Mason as approved by the male members of the Board of the District.

27. On and as of March 15, 2016, Defendant knew the truth as set forth, told and known within the internal files of the District, the testimony under oath of witnesses in the legal action, the discovery exchanged by the parties in the legal action and as set forth in the Affidavit of Karla Harris.

28. On and as of March 15, 2015, Defendant's personal knowledge was that:

   a. Plaintiff's personnel file and Summative Evaluations reflected that she was an excellent employee and administrator with high rank and excellence in performance from the staff, students, scores, attendance and other quantifiable accomplishments at the intermediate school over which

Plaintiff was administrator, and high evaluations from administration.

b.  Plaintiff's personnel file and documents included the Intermediate School having received an Exemplar Professional Learning Community Award, an Award which is for test scores, staff and student climate and professional growth. The intermediate school had the lowest staff turnover rate of schools in the District. The intermediate school had the highest test scores of students in the District. The intermediate school had the highest attendance rate of all schools in the District. Plaintiff received Silver Recognition related to climate of the building, among other said documents known by Defendant.

c.  Plaintiff's job performance supported the Board's history of repeated annual recommendation to renew the contract of Plaintiff as reflected through her years as an employee and administrator, and unanimous votes of the Board as to renewal.

d.  Plaintiff made a report under Regulation 4810 of the sexual harassment policy including that:

> "On April 21, 2015, Mr. Mason came into my office. … As he was leaving my office out my back door – he asked me to stand up. He asked me twice because I was unsure of his intent. When I stood up he preceded to ask me to turn around. I did what he asked thinking maybe something was on my back. He then lifted my sweater to mid-back and stated, "That's what I thought." As he was walking out the door he said, "You can ask me later if you are interested in why I did that."

e.  Mike Mason's written response to the Board as to Plaintiff's report included the admission that:

> "When she got up I reached over and grabbed the edge of her shirt …. I raised it slightly but it never got above her waist. … I immediately apologized saying "I am sorry I shouldn't have done that." … "I once

again apologized and told her I was out of line and that I shouldn't have touched her shirt."

f. Mike Mason deleted the texts between he and Jodi Gronvold which were part of the District's Title IX Coordinator's investigation of the report of sexual harassment.

g. The District's Title IX Coordinator's Report substantiated Plaintiff's report finding that Mason violated Board policy and Regulation 4810.

h. The District's Title IX Coordinator's Report, included that:

"Based on the two following incidences reported by Ms. Gronvold and review of follow up information gathered it is the finding of the Title IX coordinator that there was some occurrence of sexual harassment as defined by Board Policy/Regulation 4810. .... Any supervisor lifting of a subordinate's shirt even if not the the point of exposing skin but only the buttocks for no apparent reason but to view what was underneath constitutes unawarranted touching and unwelcomed physical conduct. ... Both parties indicated consistent accounts of texts involving invites to dinner with wine ...., Ms. Gronvold has made clear in her statements that she did perceive that invite as unwelcome sexual advance. ....."

i. The Board voted unanimously to accept the District's Title IX Coordinator substantiation of and findings as to the District's Superintendent, Mike Mason, having engaged in conduct of sexual harassment in violation of Board policy and Regulation 4810.

j. A school administrator had communicated to the Board and District's Title IX Coordinator that other female employees of the District had been subject to inappropriate conduct of Mason as related to the report of Mason's conduct toward Plaintiff in violation of the board's sexual harassment policy and regulation.

k. Plaintiff appealed the Board's decision. Within the appeal document the Board was informed of specific conduct of Mr. Mason toward Plaintiff of sexual harassment, and that if the Board wanted to investigate previous conduct of Mr. Mason, the identification of other female employees of the District including Karla Harris was appropriate to investigate under the Board's sexual harassment policy.

l. The Board took no act to investigate, nor request the District's Title IX Coordinator to investigate the information as to Mr. Masons conduct toward other female employees of the District, including as to Karla Harris.

29. Defendant knew from the legal action, personal knoweldge and documents of the District the following as to Plaintiff's report of sexual harassment per Regulation 4810:

a. Michael Mason testified that Plaintiff was a "good employee." (Mason deposition P. 101 L18-19)

b. Michael Mason testified that Plaintiff's 2016 evaluation of performance was "one of the best" evaluations of administrators at Reeds Spring. (Mason deposition P. 101 L22 – P. 102 L7)

c. Michael Mason testified that Plaintiff's 2016 evaluation of performance was "the best one" of administrators at the District. (Mason deposition P. 101 L22 – P. 102 L7)

d. Mason testified that he made the decision to grab the sweater of Plaintiff. (Mason deposition P. 34 L10-25)

e. Mason testified that Plaintiff did not give permission, did not say anything that would give reason to believe he could grab and raise the sweater, and did nothing that would justify grabbing and raising her sweater. (Mason deposition P. 34 L10-25)

f. During the investigation, Mason wrote the Board of the District admitting - "When she got up I reached over and grabbed the edge of her shirt .... I raised it slightly but it never got above her waist. ... I immediately apologized saying "I am sorry I shouldn't have done that." ... "I once again apologized and told her I was out of line and that I shouldn't have touched her shirt."

g. Earl Johnson understood that the conduct of Mr. Mason grabbing and raising of the sweater of Plaintiff was unwelcomed and offensive. (Johnson deposition P. 63 L13 – P. 64 L5)

h. The District Title IX Coordinator investigated the report of Plaintiff and found that Mike Mason violated Board policy of sexual harassment.

i. Mason testified that as to sexual harassment he would expect the victim to be uncomfortable, that it would be uncomfortable for her. (Mason deposition P. 59 L25 – P. 60 L3)

j. Mr. Mason testified as to sexual harassment that he would anticipate that it would be uncomfortable for the female victim of sexual harassment to have to work day after day thereafter with the male employee who engaged in the sexual harassment. (Mason deposition P. 60 L4-8)

k. Mason testified that he would expect the female to have apprehension or anxiety or distress related to having to continue to work with the male employee who engaged in sexual harassment. (Mason deposition P. 60 L9-12)

l. Mr. Mason testified to having understood that texts and the content of texts of which he was a party were part of the sexual harassment investigation as to his conduct. (Mason deposition P. 63 L18 – P. 64 L6)

m. Mike Mason did not deny the multiple texts he had sent to Plaintiff that were the subject of the sexual harassment investigation. (Mason deposition P. 59 L 25 – 60 L5;  P. 108 L3 – P. 111 L16)

n. Mr. Mason learned that Plaintiff had dropped her phone in the water. (Mason deposition P. 131 L24 – P. 132 L3)

o. Mr. Mason testified that during the investigation he entered Plaintiff's office, at which time Plaintiff told him that she was upset, she expressed that his conduct bothered her and that his conduct was inappropriate - after which Mr. Mason left the office **and deleted the texts**. (Mason deposition P. 75 L2-15;  P. 69 L24 – P. 70 L12-17;  P. 71 L12-16)

p. The District's Title IX Coordinator's investigation confirmed that Mr. Mason and Plaintiff met on May 4, 2015 and that Plaintiff relayed she was uncomfortable and bothered by the things that had occurred. (Smith deposition P. 113 L9-12)

q. Mr. Mason did not disclose to the Title IX Coordinator that he deleted the texts which were subject to the investigation after the meeting on May 4,

2015. (Smith deposition P. 115 L7-11)

r. Earl Johnson understood and believed that Mr. Mason deleted the texts because they were "unfavorable" to Mr. Mason. (Johnson deposition P. 61 L5 – P. 62 L9)

s. A school administrator informed the District's Title IX Coordinator that Mr. Mason had a history of having "preyed on females," and specific names were given including Karla Harris. (Smith deposition P. 48 L24 – 50 L1)

t. A school administrator informed Earl Johnson of prior inappropriate behavior of Mike Mason toward female employees of the District, including Karla Harris. (Johnson deposition P. 51 L3 – P. 52 L14)

u. The conduct of Mr. Masons' statement to Karla Harris related to her breasts as "fritters" was discussed by the Board. (Smith deposition P. 139 L7-12)

v. No action was taken to investigate the information as to Mason having preyed on females, nor was there mention of the information in the report of the District's Title IX Coordinator. (Smith deposition P. 58 L15-21)

w. The District's Title IX Coordinator investigated the report of Plaintiff and found that Mr. Mason violated District policy of prohibited sexual harassment. (Answer to Amended Petition, paragraphs 16 and 18; See Report of the District's Title IX Coordinator)

x. Regulation 4810 of Board Policy requires that Mr. Mason would be notified of the results of the investigation. (Regulation 4810 of the Board)

y. Mr. Mason testified that he was never notified of the results of the investigation per Regulation 4810. (Mason deposition. P. 87 L4-14)

z. **Mr. Mason testified that the Board never expressed any concern as to his conduct related to the report and findings of sexual harassment.** (Mason deposition P. 41 L18-23)

aa. Mr. Mason testified that he has never discussed the report and investigation of sexual harassment with the Board. (Mason deposition P. 130 L24 – P. 131 L4)

bb. Mason testified that Earl Johnson never told him that he had violated the Board's sexual harassment policy. (Mason deposition P. 37 L 20 – 38 L1)

cc. Earl Johnson testified that the testimony of Mr. Mason was "false" that he, Earl Johnson did tell Mr. Mason that Mr. Mason had violated the Board's sexual harassment policy. (Johnson deposition P. 83 L13-17)

dd. Mr. Mason testified that Liz Smith never told him the findings of the investigation or whether he had violated Board policy. (Mason deposition P. 39 L2-15)

ee. Liz Smith testified that she was clear and conveyed to Mr. Mason that he had violated Board regulation 4810. (Smith deposition P. 87 L10-16)

ff. Board policy requires that upon a finding substantiating sexual harassment that Mike Mason would be disciplined. (Smith deposition P. 95 L18 – P. 96 L15; Regulation 4810)

gg. Mr. Mason denied that Liz Smith told him he had been disciplined. (Mason deposition P. 41 L10-13)

hh. Liz Smith testified that she communicated to Mr. Mason that he was being disciplined. (Smith deposition P. 94 L18-24)

ii. Mr. Mason denied the Board ever told him that he was disciplined related to the report of sexual harassment. (Mason deposition P. 41 L3-9)

jj. Earl Johnson testified that the Board never stated in a Board meeting to Mr. Mason that "We're disappointed and we're unhappy," or "We're unhappy, dissatisfied with you at all for sexually harassing Jodi Gronvold" (Johnson P. 34 L6-12)

kk. **Earl Johnson testified that during the Board meetings with Mr. Mason no one expressed disapproval of the actions of Mr. Mason**. (Johnson P. 35 L6-14)

ll. Earl Johnson never stated to Jodi Gronvold that he was sorry as to what occurred to her. (Johnson P. 37 L16 – P. 38 L2)

mm. Earl Johnson testified that to his knowledge no Board member asked that it be conveyed that they were sorry. (Johnson P. 38 L3-5)

nn. Earl Johnson testified that it had never occurred to him to tell Jodi Gronvold he was sorry. (Johnson P. 39 L17-20)

oo. Earl Johnson testified that none of the Board members ever expressed that it be conveyed to Jodi they were concerned or sorry. (Johnson P. 39 L21-25)

pp. During her appeal of the Board's discipline of Mr. Mason, Plaintiff asked the Board if it wanted to investigate the conduct of Mike Mason toward Karla Harris and other female employees of the district. (Johnson P. 72

L9-25)

qq. Earl Johnson testified that he took no act to direct anyone to investigate the information within the appeal of Plaintiff. (Johnson P. 72 L9-15)

rr. Earl Johnson testified that the Board took no action to direct or conduct further investigation of the information in the appeal letter of Plaintiff. (Johnson deposition P. 72 L16-19)

30. Defendant knew from the legal action, personal knoweldge and documents of the District the following as to Plaintiff's Charge as to retaliation related to the December 22, 2015 meeting and other acts, as follows:

a. Earl Johnson testified that District had a normal interactive process that once a parent complaint came to the attention of school personnel, whether administrator, teacher or staff, a discussion would then occur with the school employee as to whom the complaint was directed to obtain facts and information. This process provides truth and veracity as to what occurred, is fair to the school employee, administrator, teacher, superintendent or Board member, and is the best interest of the student, parent and the district. (Johnson deposition P. 80 L12 – P. 81 L9)

b. The normal interactive process is not to refuse to provide facts or details related to the parent complaint or hide the ball from the staff person, administrator or superintendent. (Johnson deposition P. 81 L10 – P. 82 L17)

c. On December 16, 2015, a closed session meeting occurred of the Board, Mason and others.

d. Mr. Johnson testified that it was not unusual for the Board to hear of parent complaints. (Johnson deposition P. 100 L19-23)

e. Board members discussed a total of six parent concerns, one of which was about a child who colored his hair when the student assembly had been told not to color their hair, another was of a parent who didn't feel welcomed in the intermediate building and a teacher had not allowed her child to bring candy to class as had also not been allowed with other children, and the other concerns were from Board member Rick Porter and his wife Kristal Porter (complaining as to their child watching a PG movie when Kristal Porter had signed authorization for PG movies to be watched) and from the wife and Brother-in-law of Matt Greenwalt (about the intermediate school staff). (Johnson P. 90 L7 – P. 98 L12)

f. Mr. Johnson testified that the Board directed that Mr. Mason meet with Plaintiff. (Johnson P. 88 L12-15)

g. Earl Johnson testified that Mason had been provided the facts and details of the concerns of Plaintiff on December 16th at the Board meeting. (Johnson deposition P. 111 L7-23) (Johnson deposition 113 L11 – P. 114 L4)

h. Mr. Johnson testified that the facts and details were to be provided to Jodi during the meeting between her and Mason. (Johnson deposition P. 116 L10 -15)

i. On December 22, 2015, Mike Mason and others met with Plaintiff. (Mason deposition P. 178 L 23 – 25)

j. Mr. Mason drafted a memo for the meeting. (Mason deposition P. 177 L18-24)

k. The memo drafted by Mr. Mason, and then handed to Plaintiff stated: "climate of the building as it relates to parents, students, and staff Empathy, listening to parents, taking constructive input."

l. During the meeting, Mr. Mason testified that when Plaintiff asked for details related to the memo, Mr. Mason told her he could not give her details because he did not have the details because the Board didn't provide them to him. (Mason deposition P. 202 L3-8)

m. Steve Verheyen testified that Mr. Mason gave no details to Plaintiff and instead Mason told Plaintiff on several occasions that it was the Board who directed he give her the memo. (Verheyen deposition P. 121 L5-18)

n. Mike Mason testified that as the normal interactive process did NOT occur as to Jodi and the meeting of December 22, 2015. (Mason deposition P. 184 L22 – P. 185 L2)

o. Mike Mason told Plaintiff that the Board had requested a plan to address the memo. (Mason deposition P. 177 L11-14)

p. Mike Mason testified that he was sure other administrators had parent complaints but not a single administrator other than Jodi had been asked to write a plan. (Mason deposition P. 177 L15-22)

q. Mike Mason testified that Jodi Gronvold is the only administrator who was asked to write a plan as occurred on December 22, 2015. (Mason deposition P. 178 L11-15)

r.   Mike Mason testified that what occurred as to Plaintiff on December 22, 2015 is the sole exception to the normal interactive process of addressing parent concerns. (Mason deposition P. 253 L16-23)

31. At the time of the retaliatory statements and conduct herein, Defendant would have knowledge that Mike Mason testified under oath to several significant statements contrary to the testimony under oath of Defendant Johnson and the District's Title IX Coordinator, and hence Defendant would be aware issues of credibility of the testimony given under oath by Mr. Mason, including, as set forth herein:

a.   Mason denying compliance with the notification provision of Regulation 4810, and that Earl Johnson or the District's Title IX Coordinator notified him of the results of the sexual harassment investigation. Johnson and the Title IX Coordinator testified to having so notified Mr. Mason. (Paragraph 28 "y. thru ee.")

b.   Mason denying having been disciplined as required by the provisions of Regulation 4810, while Johnson and the Title IX Coordinator testified to having communicated discipline to Mr. Mason that he was being disciplined. (Paragraph 28 "ff. thru gg.")

c.   As to the December 16, 2015 Board meeting and December 22, 2015 meeting of Mason with Plaintiff, Mason denying the Board having provided him facts related to alleged parent concerns, when Johnson testified the facts and details had been conveyed and were to have been provided to Plaintiff as part of the normal interactive process. (Paragraph 29 "f. thru l.")

d. Other significant directly contradictory testimony of Mason as to his communications with Defendant Johnson and the District's Title IX Coordinator, which if Defendant Johnson and the Coordinator testified truthfully then Johnson (and the Board members he told) would at the least consider the testimony of Mr. Mason to not be credible, and

e. That Mason had deleted texts related to sexual harassment because they were unfavorable to a finding in his favor.

32. In addition to the above, Defendant had knowledge and were aware that:

a. Michael Mason testified that he would recommend Plaintiff's contract be renewed for the 2017-2018 school year because "she's a good principal." (Mason deposition P. 102 L20 – P. 103 L4)

b. Earl Johnson testified that on his personal knoweldge he intended to recommend the renewal of the contract of Plaintiff for the 2017-2018 academic year. (Johnson deposition P. 7 L3-6)

c. Earl Johnson testified as to why he intended to recommend renewal of Plaintiff's contract as an administrator for 2017-2018 that "she does good work, and I don't know of anything that would cause a change in that." (Johnson deposition P. 7 L3-9)

d. From the plain reading of the information known and available in the testimony of the legal action, pleadings, personnel file, Summative Evaluations and documents produced in the legal action and within the custody of the District it would be would be FALSE, MALICIOUS, WRONG, UNWARRANTED and RETALIATIORY for Defendant to

expressly or by inference, implication or hints, make statements that were disparaging, derogatory, speaking ill of, bad mouthing or sulling the reputation of Plaintiff or her performance as an administrator of the District.

33. As a result of knowledge known and available in the testimony, pleadings, personnel file, Summative Evaluations and documents produced in the legal action and within the custody of the District, Defendant would have knowledge:

    a. Of the facts herein, the facts within the testimony and documents, including, but not limited to, Mr. Mason's violation of Board policy, the District's failure to fully investigate Plaintiff's report, the testimony of Mason in contradiction to that of Smith and Johnson, and if Smith and Johnson are believed to be truthful then it would be known that Mason made multiple statements of false testimony on signficant facts related to the sexual harassment and retaliation;

    b. The Affidavit of Karla Harris and its content;

    c. That Plaintiff was an excellent administrator with one of, if not the highest Summative Evaluations of any administrator in the District.

    d. That there exists NO information as to Plaintiff's performance as an administrator, including her personnel file, other than Plaintiff being an excellent administrator;

    e. That during the period of March 15, 2017 to current it would be FALSE, MALICIOUS, WRONG, UNWARRANTED and RETALIATORY for a Board member or administrator or John Doe or Jane Doe to represent, expressly or by inference, implication or hints, statements placing Plaintiff

in a false light or infer anything disparaging, derogatory, speaking ill of, bad mouthing or sulling the reputation of Plaintiff or her performance as an administrator of the District.

    f.  In addition, Defendant would be aware that Plaintiff lived local to Reeds Spring, and that the statements and implications placing Plaintiff in a false light as occurred, would have an adverse effect on her ability to obtain gainful employment in Districts local to Reeds Spring or other school districts.

34. During the period of March 15, 2017 to current, despite and with the knowledge or ability to have knoweldge of the above, Earl Johnson and Rob Barringer made disparaging and derogatory statements, rumors, spoke ill of, and in general bad mouthed Plaintiff to numerous patrons of the District in retaliation for Plaintiff's protected activity herein. Johnson and Barringer did so expressly, but mainly by inferring, hinting and implying to patrons of the District, and through the media, that the facts within newspaper articles were not the "whole story" and/or that Plaintiff had done something wrong or horrific related to her job performance, or that Plaintiff's job performance was less than that of being a good employee.

35. On March 27, 2015, for instance, Barringer instant messaged a district patron on her Facebook page and requested that she call him at (417) 527-0108. On that same date, the district patrons called Mr. Barringer. During the conversation, Mr. Barringer repeatedly reiterated the same point – namely, that the school Board knew information that would paint Plaintiff in a bad light. Mr. Barringer made statement such as "If you guys only knew," "we know things that everyone else doesn't know,"

"if everyone else knew what we know." and different variations ending with the same conclusion, inference and meaning by express implication that Jodi Gronvold had done something bad and if her acts were known that the public wouldn't support her. Mr. Barringer repeatedly would allude to how he would like to provide the information to the public and that it was "bad, if we only knew" and similar statements casting Plaintiff in a bad light.

36. On April 2, 2017, Barringer spoke with another district patron that "There is more to the story" regarding the RSSD superintendent's sexual harassment of Plaintiff, that, sadly, the personnel files of the parties involved couldn't be released and the Board couldn't talk about specifics due to the judge's gag order. But, that the patron should know that the Board made the correct decision in retaining the superintendent…. If the patron knew 'the rest of the story,' the patron would understand also. When asked if Plaintiff had encouraged Mason's advances, Mr. Barringer said no, she hadn't, but that there is more to the story and the patron would understand if only that information could be released. Mr. Barringer made repeated statements of "there's more to the story," and "we just can't tell you what really happened," in an effort to cast Plaintiff in an unfavorable light suggesting that Plaintiff had done some horrific thing to explain how or why Board handled the situation and the lawsuit.

37. On April 10, 2017, for instance, Earl Johnson called a district patron repeatedly stating "There is more to the story," that if only personnel files could be public, the patron would know why Mason was retained and Plaintiff wasn't. Johnson also told the patron, "Just because a petitioner makes statements in a petition, that doesn't make those statements true." This was in response to the patron's pointing out that in

court documents Mason had admitted the harassment. When asked why Mason wasn't put on administrative leave during the investigation, Mr. Johnson said he couldn't talk about why but, if only those personnel files could be released, the patron would understand. Mr. Johnson also said the Branson newspaper could be in legal trouble as their articles have not been an "accurate filter" of what really happened. Mr. Johnson made repeated statements of "There's more to the story," and 'we just can't tell you what really happened,' in an effort to cast Plaintiff in an unfavorable light, suggesting Plaintiff had done some horrific thing to move the Board to handle this situation and lawsuit as they had.

38. On information and belief, Johnson and Barringer have had communications as set forth herein with other patrons of the District.

39. In addition, Johnson has made statements to the media which by express statement or implication maligned and/or placed Plaintiff in a false light, including, but not limited to:

    a. Johnson published a Letter as a Board President which was placed on Reeds Spring School's Facebook, and published in the media.

    b. Johnson reported to the media that that there was another side of the story, that a signficant part of what the Branson Tri-Lakes News had printed was "false and it's provable – not accurate," and that there is a "document" to support his statement, and that "it's not only a document, but it's also discussions – things that aren't written down. There's a lot to that story."

    c. Johnson published as to Plaintiff (in reference to a Petition) - "If they knew the whole story, would they take their name off? Probably." Mr. Johnson

declined to divulge the "whole story."

40. The statements of Earl Johnson to the media, like those to patrons, are retaliatory and in bad faith, with Johnson stating there is a "whole story" and "document" and other claims inferring there is more out there than the truth as known by Johnson within the testimony, pleadings and documents of the District. Making it worse, Johnson would place Plaintiff in a false light, and then hide behind not being able to talk about or disclose the information or document, knowing there existed no information other than the truth as set forth in the testimony and information within the District. Johnson's acts of intentional publication of this information through the media, as with the patron citizens, was retaliatory, intentionally placing Plaintiff in a false light asserting allegations of there being a "whole story" and a "document" when the "whole story" and any "document" of the truth was known by Johnson as set forth herein by the testimony, pleadings and documents within the District.

41. Earl Johnson, Rob Barringer, John Does, John Doe Board Members and Jane Does have engaged in retaliation by express statement and implication that there exists false, inaccurate, disparaging statements placing Plaintiff in a false light when Defendant knew the truth (the "whole story") as set forth within the legal pleadings, testimony and documents within the District.

42. Defendant engaged in the falsehoods and retaliation of by express statement, implication or hints of stating or implying there existed facts and information other than the truth in the legal pleadings, testimony, and documents within the District, and believing that the retaliatory animus and intent of their statements, implications and hints would never be discovered or known by hiding behind not having to produce the

document, or documents, or personnel file or testimony under oath to the public which would show the wrongness of their retaliatory statements.

## COUNT I – RETALIATION AND DISCRIMINATION

**COMES NOW** Plaintiff and for Count I as to Defendant, states:

43. Incorporate herein the General Allegations.

44. Defendant has a policy prohibiting retaliation against Plaintiff for her complaint and opposition to the unlawful sexual harassment and retaliation as set forth herein.

45. Plaintiff is an 'employee' within the meaning of Title VII, 42 U.S.C. Sec. 2000e, et seq.

46. Defendant is an 'employer' within the meaning of Title VII, 42 U.S.C. §2000e, *et seq.*

47. With respect to the unlawful employment practices, a Charge of Discrimination as Amended was filed with the Equal Opportunity Commission (as dual filed with the Missouri Commission of Human Rights). Attached hereto **Exhibit E** is a true and accurate copy of the Charge of Discrimination made part hereof by reference as to the facts set forth therein.

48. Said Charge of Discrimination was filed with the MCHR within 180 days of the most recent unlawful employment practices alleged, and more than 60 days prior to the commencement of this action.

49. With respect to the Charge of Discrimination, Plaintiff was issued a Right to Sue letter by the EEOC, informing her of her right to pursue independent legal action and this action is filed in a timely manner wthin 90 days of receipt of the Right to Sue. Attached hereto **Exhibit F** is a true and accurate copy of the Right to Sue.

50. Defendant engaged in unlawful employment practices, as set forth herein, against Plaintiff in violation of Title VII 42 U.S.C. Sec. 2000e-3, *et seq* in that Plaintiff was subject to retaliation discrimination which Defendants were aware of and failed to stop or prevent.

51. Defendant's actions, as set forth herein, were discriminatory, continuous, arbitrary and capricious and Defendant knew such actions were unlawful. The actions of Defendant were intentional, willful and calculated toward Plaintiff and constituted willful violations of Title VII, 42 U.S.C. 2000e-3, *et seq.*

52. Plaintiff has been monetarily damaged by Defendant's unlawful practices in violation of Title VII, 42 U.S.C. 2000e, *et seq.,* and has also suffered physical and mental pain, anguish and distress.

**WHEREFORE**, Plaintiff prays the Court:

A. Adjudge and decree that Defendant discriminated/retaliated against Plaintiff, and that said actions by Defendant were willful violations of the Act;

B. Order Defendant to make Plaintiff whole for the loss of income she has suffered as a result of Defendant's unlawful employment practices, including back pay from the time of the unlawful discrimination, wage increases and reimbursement of any lost fringe benefits, Social Security contributions, front pay, and all other monetary compensation, including prejudgment interest, for injuries and damages suffered by Plaintiff;

C. Award Plaintiff attorney's fees, costs and all other relief afforded under Title VII, 42 U.S.C. 2000e, *et seq.,* and;

D. For all other relief the Court deems just and proper.

## COUNT II– PUNITIVES

**COMES NOW** Plaintiff and for Count I as to Defendant, states:

53. Incorporate herein the General Allegations and Count I.

54. Defendant had information and personal knowledge as related to Plaintiff and with such knowledge knew that it would be wrong to express, or by implication, disparage Plaintiff as a person or any aspect of her performance as an administrator of the District.

55. Defendant had information and personal knowledge as related to what would be the "whole story" all information known surrounding Plaintiff, Mike Mason and the action of the board of the District; and with such knowledge knew it would be wrong to express, or by implication, disparage Plaintiff as a person or any aspect of her performance as an administrator of the District.

56. Despite the knowledge herein, Defendant engaged in conduct of placing Plaintiff in a false light while hiding behind the assertions that they could not reveal the information to prove their knowingly made false implications, such conduct being wrong, malicious, and in reckless disregard of the rights of Plaintiff and such that should be deterred, justifying the imposition of punitive damages.

**WHEREFORE,** Plaintiff prays for punitive damages to deter such conduct, and compensatory and special damages as pled herein, and for all further relief the Court deems just and proper.

*/s/Jay Kirksey*

---

**Jerry M. Kirksey**
Missouri Bar No. 38643
Attorney for Plaintiff

**Kirksey Law Firm, LLC**
711 S. Albany Avenue
Bolivar, Missouri 65613-2619
Telephone: (417) 326-4529
Facsimile: (417) 326-8531
jmkirksey@kirkseylawfirm.com